THE PEOPLE, on the relation of E. Bailey, *vs.* THE JUDGES OF THE ALBANY MAYOR'S COURT.

Executors and administrators are not liable to costs in suits necessarily prosecuted by them in the right of their testator or intestate, unless the court shall upon special application award costs against them for wantonly bringing any suit, or unnecessarily suffering a nonsuit or non-pross, or for bad faith in bringing or conducting the cause.

But where they unnecessarily sue in their representative character, as for a cause of action accruing subsequent to the death of their testator or intestate, they are liable *personally* to costs.

A special application to the court for costs is not necessary, where the executor or administrator is *personally* liable ; and in such case an execution may issue, although no account has been rendered of the administration to the surrogate, and no order made by him for execution.

A surrogate may make order for execution against executors or administrators on judgments *after a trial at law upon the merits ;* but he has no jurisdiction where judgments pass against executors or administrators without trial.

The omission to state the *title of office* of the presiding officer of a court in the *teste* of a writ is no cause for setting aside the process ; an amendment will be allowed.

February 21. COSTS against administrators. H. C. Whelpley, *as collector** of the goods of Erastus Young, deceased, brought an action of *replevin* in the mayor's court of Albany, against E. Bailey, and declared that the defendant had received of Young, in his life time, certain property, to be delivered to him or his representative upon request ; and that though requested by Young in his life time, and by the plaintiff since the death of Young, the defendant had not delivered up the property, but detained the same. The defendant pleaded, 1. *non detinet.*

* *Collector* is an officer created by the revised statutes, to whom *special* letters of administration are granted in certain specified cases. 2 *R. S.* 76, § 38.

and 2. that the plaintiff was not, and never had been, collector, &c.; upon which pleas issue was taken, and the cause was tried. On the trial the plaintiff claimed to recover for the wrongful detention of the property after demand by him; and it appeared that the cause of action, if any, arose after the decease of Young. The defendant had a verdict, entered judgment for costs, without previous application to the court, and issued execution *de bonis propriis*, the defendant being described in the execution in the character in which he sued. The defendant moved the mayor's court to set aside the execution for irregularity, on an affidavit stating his appointment as *collector* on the 17th March, 1832, and his subsequent appointment as *administrator* on the 30th April following; that no account of his administration had been rendered by him to the surrogate, and that the surrogate had not made any order allowing an execution to issue against him. It also appeared that in the *teste* of the execution the title of office of the *mayor* was omitted to be stated; it was tested thus; "Witness John Townsend, Esquire, of our said city, at Albany, the first Tuesday of October, in the year," &c. The mayor's court set aside the execution. The defendant below applied for and obtained an *alternative mandamus*, directing the mayor's court to vacate the rule setting aside the execution, or shew cause. On the coming in of a return to the alternative mandamus, shewing the above facts, the relator asked for a *peremptory mandamus.*

*R. W. Peckham*, for the relator.

*J. I. Lansing*, contra.

*By the Court*, SAVAGE, Ch. J. There is no objection to the execution on the ground of variance from the record. The plaintiff is described in the record as collector, and he is so described in the execution; but that is mere description, and no admission that he was in truth collector. The record finds that he was not, and never had been collector, &c. The execution, I apprehend, was not set aside on that ground, nor because the word *mayor* is left out after the mayor's name in

*Margin note:* ALBANY, Feb. 1833.

The People
v.
Judges of the Albany Mayor's Court

ALBANY,
Feb. 1833.

The People
v.
Judges of the
Albany
Mayor's Court

the *teste* of the writ. It was not alleged that John Townsend was not in fact mayor at the time when the writ was tested. And had the court below thought the omission of the title of office a fatal mistake, still an amendment would have been permitted. The ground upon which the motion was granted in the court below was that an execution had been issued against a person suing in a representative character, without an order of the surrogate permitting it to be done, and the only important question for decision now is whether the revised statutes apply to this case? By those statutes, 2 *R. S.* 88, § 32, it is enacted that no execution shall issue against an executor or administrator until an account of his administration shall have been rendered and settled, unless an order of the surrogate who appointed him has been obtained authorizing such execution; and then to issue only for the proportion of the assets applicable to the judgment. The previous sections relate to the duties of executors and administrators, and to suits against them; and so also do the subsequent sections, in which the legislature evidently evince a desire to protect the assets in the hands of executors and administrators for the benefit of the creditors of the deceased, and to prevent their being exhausted in the payment of unnecessary costs. Hence the 41st section provides that executors and administrators shall not be compelled to pay costs in any case, unless there has been due diligence on the part of the creditors in presenting their demands, and negligence, at least, on the part of the executors or administrators; and the court may direct in their discretion whether the costs shall be paid out of the assets, or out of the individual property of the executors or administrators. In confirmation of the idea that the object of the legislature was to protect the assets from waste, is a subsequent section, 2 *R. S.* 116, § 19, which declares, that when a creditor shall have obtained judgment against an executor or administrator, *after a trial at law upon the merits,* he may at any time thereafter apply to the surrogate having jurisdiction, for an order against such executor or administrator, to shew cause why an execution on such judgment should not be issued. The surrogate has no concern with the individual property of the executor or administrator, any more than he has with the

property of any other suitor; but he is supposed to have the control of the effects of deceased persons, and he appoints the *administrators* and *collectors,* and issues letters testamentary to *executors;* and before he can interfere or have any authority to order an execution, there must have been a trial upon the merits. The surrogate, therefore, it seems has not jurisdiction in all cases, for it often happens that judgments pass against executors and administrators without a trial at law upon the merits. It is also enacted, 2 *R. S.* 618, § 37, that in suits against executors and administrators, in which the plaintiff shall recover costs, the judgment shall be that such costs be collected of the assets, unless in cases provided for in the sections to which I have previously referred. The statute relating to costs, 2 *R. S.* 615, § 16, declares the cases in which the defendant shall recover costs against the plaintiff; and, in general, he is so entitled in all cases in which he would have been compelled to pay costs, had the plaintiff prevailed. But the 17th section explains and qualifies it by declaring that such defendant shall not have costs against executors and administrators *necessarily* prosecuting in the right of their testator or intestate, unless the court shall upon special application award costs against them for wantonly bringing any suit, or unnecessarily suffering a nonsuit or *non pross,* or for bad faith in bringing or conducting the cause. From this section, it is inferrible that none of these guards thrown round the executor and administrator apply to them, unless they *necessarily* prosecute in their representative character.

Two questions arise upon the regularity of the execution issued in this case. 1. Was the plaintiff liable to costs? 2. If liable, was a special motion to the court to award costs necessary? If the plaintiff could have prosecuted in his own name without setting forth his representative character, then he is liable individually. The revised statutes, in my opinion, have not altered the law as to executors and administrators plaintiffs, where costs only are in question, unless these costs are to be paid out of the assets. Whatever contrariety of decision may have taken place in England as to the liability of executors and administrators prosecuting as plaintiffs, the rule in this state appears to have been uniform. In *Filton's*

ALBANY,
Feb. 1833.

The People
v.
Judges of the
Albany
Mayor's Court.

ALBANY,
Feb. 1833.

The People
.v.
Judges of the
Albany
Mayor's Court.

adm'r. v. *Williams*, 11 *Johns. R.* 403, the plaintiffs declared in trover in several counts ; in some, the trover and conversion were laid in the lifetime of the intestate ; in others, after his death. The court said it was well settled that if the declaration contain but one count, and that charges the trover and conversion in the intestate's lifetime, then the administrator is not liable for costs ; if they were laid after the death, then costs were chargeable ; and as the judge in that case certified that the evidence applied to the count charging the trover and conversion after the death of the intestate, the plaintiffs were adjudged to be liable. The court said that the statute exempting executors and administrators from the payment of costs, when prosecuting in right of their testator or intestate, applied only to cases where it was necessary for them to prosecute in their representative character. The revised statutes are explicit on that subject. The 17th section, 2 *R. S.* 615, was no doubt so drawn as to render clear and explicit what was perhaps obscure in the 2d section of the act of 1813. 1 *R. L.* 343. Ever since the case above cited, the principle has never been controverted that a plaintiff suing *unnecessarily* in a representative character is liable for costs. In *Ketchum* v. *Ketchum*, 4 *Cowen*, 87, the principle was again recognized that where the cause of action accrues wholly after the testator's death, the plaintiff is liable if he fails. In that case, we were of opinion that it was necessary for the plaintiff to sue in his representative character ; the cause of action was complete during the life of his testator. That was an action of assumpsit. The case of *Barker & Mann* v. *Baker*, 5 *Cowen*, 267, was trover, and more like this case. The plaintiffs declared in three counts: the first charged the trover and conversion in the testator's lifetime ; the second charged the trover in the testator's lifetime, and the conversion after his death ; the third charged both trover and conversion after the testator's death. On the trial, the plaintiffs proved that the horses were found in the defendant's possession after the testator's death, and on demand, the defendant refused to deliver them up. The plaintiffs failing, were held liable for costs. We held that in trover where the conversion, which is the gist of the action, was after the death of the testator, the plaintiffs must

ALBANY,
Feb. 1833.

The People
v.
Judges of the
Albany
Mayor's Court.

pay costs on failure. No cause of action existed in the testator's lifetime; the plaintiffs might have sued in their own names, and not as executors, and therefore they were liable. At the death of the testator, the personal property vests in the executors; they should therefore sue in their own right, and never in their representative character, only where the deceased had a complete right of action in his lifetime. In this case no cause of action existed in the lifetime of the intestate. The property in question was delivered, according to the declaration, to the defendant by the intestate, to be returned upon request; but no request being alleged in the lifetime of Young, no cause of action is shewn in favor of Young. The cause of action arose when the defendant refused to give up the property on demand. This is a case, therefore, where the cause of action arose after the death of the intestate, and the collector need not have sued in his representative character; of course, on failure, he is liable personally for costs.

Was it regular to issue execution without motion to the court for that purpose? All the cases on this point have arisen on special motions for costs; but I do not find it adjudicated that a special motion shall be made where the plaintiff is personally liable. In such cases, he is stripped of his representative character, and stands as an individual before the court. Had the defendant in this case in fact prosecuted in his own name, without any addition or description of character, there could hardly be a pretence for saying that a special motion was necessary to charge him with costs. He is, so far as costs are concerned, not prosecuting as collector, but in his own right for his own property. All the sections of the revised statutes, except the 17th section, page 615, relate to executors or administrators in their representative capacity, and therefore have no application to this case. Thus far, I have considered the case upon the affidavits. The record places the case clear of any doubt. According to it, the plaintiff sued as collector. If the record was erroneously made up, it should have been corrected by a motion to the mayor's court for that purpose; while it remains as it is, it fully justifies the execution. In my opinion the court below erred in setting aside the execution, and the mandamus must be granted, with costs.