Fox agt. Fox.

---

## SUPREME COURT.

PETER G. Fox, executor, &c. of ARCHIBALD Fox, deceased, agt. LAWRENCE M. Fox. THE SAME agt. THE SAME.

Under § 317 of the Code, and under the Revised Statutes, (2 R. S., 90,) § 41, executors and administrators are not exempt from costs in actions brought by themselves. It is only in actions brought against them that the exemption from costs is provided for by § 41.

In this case it appeared that two actions were brought by the executors against the defendant—the first, founded upon a note of $500, found among the assets of the testator, which the defendant claimed was for money which the testator let the defendant have, and as the proof on the trial tended to show, as a gift, or an outfit for the defendant, by his father, the testator. The second action was to recover property worth $760, which was litigated by the plaintiff upon the theory that it was wrongfully converted by defendant prior to the death of the testator, which property was claimed by defendant and proved on the trial to be a gift by defendant's father, the testator. Both actions brought at the instance of the widow, (mother of defendant,) sole devisee and legatee under the will, who employed separate counsel in the actions.

In the first action the report of the referee embraced his findings upon sixteen different and distinct facts, litigated on the trial, and among other things found "that the defendant having rendered his services, &c. (other counter-claims) for the testator, under an express agreement by the testator that he would amply remunerate him the defendant therefor, in and by his last will and testament, and he the testator not having provided for such remuneration in and by his said last will and testament, to any extent whatever, is entitled to recover for his said services, &c., and finds in favor of the defendant $2,123.71." In the second action, which on the trial involved the vindication of the defendant's title to the property claimed, the referee found for the defendant. The trial of both actions

Fox agt. Fox.

(together) occupied three days—ten witnesses were sworn on the part of the plain-
tiff, and fourteen witnesses on the part of the defendant,

*Held*, that the actions were ordinary actions, conducted in the ordinary way, having
a large number of witnesses on each side, and took the necessary time for their
examination. Such a case is not difficult *and* extraordinary within the meaning
of § 309 of the Code. Motion for extra costs denied. (*It would seem, from the
decision in this case, that the cases which fall under the operation of § 309 of
the Code, are exceedingly limited.—*REP.)

STATEMENT of facts by defendant : The first cause was
founded upon a note of $500, found by the executor among
the assets of the testator. The note was for money the
testator let the defendant have on his going west in April,
1856, and as the proof on the trial tended to show, was
intended as *a gift, or an outfit* for the defendant, by his
father, the testator ; that there was no proof to the con-
trary except what appeared on the face of the note ; that
plaintiff brought the suit at the instance and request of the
widow, who was made by the will (as has been adjudged
by this court, in a suit by the executor asking judicial con-
struction of the will) the sole devisee and legatee, and she
insisted upon the enforcement of the note against defend-
ant ; the plaintiff presented the note for payment, and the
defendant informed the plaintiff that he did not owe the
estate anything ; that the estate was indebted to him over
and above any amount which might be due on the note,
upon a counter-claim for work, labor and services of de-
fendant for the testator ; and also for the use of a team and
cow ; also for money had by testator of defendant ; and
for money paid by defendant for testator ; and that the
estate was indebted to him over and above any amount
which might be due upon the note. To which the plaintiff
replied, " then I suppose it will have to be litigated out or
lawed through." That Mrs. Fox, the widow, also insisted
there was nothing due to defendant, and thus defendant's
claims were entirely rejected as not due to him. Soon
thereafter this action was brought upon the note, to which
the defendant interposed his said defences, which were con-

tested on the trial. That Mrs. Fox employed counsel on her own separate behalf, besides the counsel employed by the plaintiff. The trial occupied three days, and on the part of the plaintiff ten witnesses, and on the part of the defendant fourteen witnesses were sworn and testified; and the inquiry extended to the whole farming, hop-growing and dairy business of the testator on two large farms; that the evidence showed clearly and beyond dispute that the defendant had been the agent of the testator, for the most of the time after the defendant was twenty-one years old; that the testator placed great confidence in defendant and trusted and depended upon him in all his business; and that defendant was twenty-eight years old at the decease of the testator. It also appeared that the testator intended to give and supposed he had given defendant his "homestead farm," and part of another farm adjoining, worth $11,000; that he had often expressed such intention and had spoken of the farm as belonging to the defendant; but that it had been adjudged in this court that the will did not carry out such intention.

The report of the referee embraced his findings upon sixteen different and distinct facts, litigated on the trial, and among other things finds " that the defendant having rendered his services, &c. (other counter-claims) for the testator, under an express agreement by the testator that he would amply remunerate him the defendant therefor, in and by his last will and testament, and he the testator not having provided for such remuneration in and by his said last will and testament, to any extent whatever, is entitled to recover for his said services," &c., and finds in favor of defendant $2,123.71, and orders judgment for that amount, with costs, &c.

Various questions of law and evidence, and the amendment of plaintiff's pleadings, were raised, discussed and decided on the trial; and briefs equal to the importance of the cases were submitted by the defendant, and, in short,

defendant claims the case was " difficult and extraordinary," within the meaning of Code, section 309.

2d. The second cause was brought to recover the property in the complaint, worth $760, and was litigated by plaintiff upon the theory that it was wrongfully converted by defendant prior to the death of the testator.

Defendant claimed title, and proved on the trial, beyond dispute, that the whole of the property was given by defendant's father, the testator, to defendant, and received and appropriated by him to his own use, to the knowledge and with the full consent of his father.

This action was also brought at the instance of the widow, (mother of defendant,) the sole devisee and legatee, as above stated.

This cause was also attended with great trouble, labor and expense to defendant to vindicate his title to the property, and involved various questions of law and evidence, and pleadings, as fully shown in the papers. The referee reported in favor of defendant. This is also claimed to be a proper case for a further allowance under section 309, Code. The defendant moved, in each case, before Mr. Justice CAMPBELL, in October, 1859, at his chambers at Cherry Valley, Otsego county, " that a further allowance of costs to defendant be made pursuant to section 309, Code."

His honor, Justice CAMPBELL, denied the motions in each, " upon the ground (stated in the order.) : 1st. It is premature, as no order has been obtained allowing the defendant to recover the ordinary taxable costs, &c. in the actions ;" and " 2d. No certificate of the referee as to the nature of the case, &c., has been presented."

The order imposed on the defendant $10 costs of opposing, and with leave to renew the motions (on further papers) if he should be so advised.

The motions were renewed at a special term in Montgomery county, in November, 1859, before Mr. Justice POTTER, that the defendant be allowed the ordinary taxable

costs and disbursements in the actions, and also for a further allowance pursuant to section 309, Code.

His honor, Justice POTTER, also denied the motions upon the grounds stated in his (following) opinion. He also imposed $10 costs of opposing.

H. C. ADAMS, *for the defendant.*
A. H. AYRES and P. GRIDLEY, *for plaintiff.*

POTTER, Justice. Whatever I might feel disposed to do in these cases, had I the right to the exercise of a discretion, I have not the power, as I understand it, to grant these motions. The Revised Statutes (2 *R. S.*, 90, § 41,) remains in full force and unrepealed.

It is doubtless the phraseology of the 317th section of the Code that has misled the defendant in his view of his rights. While it seems to give costs, in general, the second branch of the section re-enacts and continues in force the old provision of the statutes above cited.

This statute (§ 41) provides but two cases in which executors or administrators are liable to costs. The court cannot, if they would, disregard this language : " Nor shall any costs be recovered in any suit at law against any executors or administrators, to be levied of their property, or the property of the deceased, unless it appear, (first,) that the demand upon which the action was founded, was presented within the time aforesaid ; (referring to the time fixed by statute in a notice to be published) and its payment unreasonably resisted or neglected ;" or, (second,) " that the defendant refused to refer the same pursuant to the preceding provisions," (the provisions made in the statute in relation to such cases.)

These cases do not come within either of the provisions or exceptions above mentioned where costs can be imposed by the court.

Nor is this a new view of these provisions. The case of

*Belding* agt. *Knowlton*, (3 *Sand. S. C. R.*, 758,) is expressly in point. So, too, the cases of *Benedict* agt. *Caffe*, ( 3 *Duer*, 672,) and *Fort* agt. *Gooding*, (9 *Barb.*, 388–394, per WILLARD, J.)

And it does not change and ought not to change the liability of an executor or administrator to costs, that the claim was interposed as a defence in the form of a counter-claim instead of bringing an action as plaintiff directly to recover the demand (as a party can now do in all the cases in which he as defendant may set up a counter-claim.)

The statute is general; it protects in all cases except in the cases of misconduct and breach of duty above specified; and why should it not? The very object of the statute was the protection of the estates of deceased persons. It is a remedial act, and is not to be defeated by mere change of places by the parties.

Representatives of estates might otherwise themselves defeat these excellent provisions, and connive at a destruction of the estates of their testators or intestates, and courts would thus lose all control over them.

These cases are both actions at law. The referee had, therefore, no discretion to allow costs; and the cases do not come within the exceptions that authorize the court to allow costs; and as they cannot allow ordinary costs, they cannot of course allow extra costs.

Nor do I think these cases belong to the class of " extraordinary and difficult cases" in the fair interpretation and meaning of those terms, even if the court had the power.

*Extraordinary* is above *ordinary*; it is "remarkable," "uncommon;" " so in an eminent degree."

I have been able to see no such character in these cases.

So, too, " *difficult*," although a comparative term, is to have at least the common sense meaning and common understanding of that term, as applicable to the *character* as well as to the trial of actions.

What would be difficult to one counsel might perhaps be

quite a common affair to another. So that the skill or capacity of the counsel is not to control.

In the sense contended for, every case is "difficult." The difficulty must be inherent in the case itself, so that from its peculiar character and more than ordinary features it is difficult.

If compared with the average of ordinary cases it presents nothing but a good deal of labor of the common and ordinary kind, then it is not " difficult" in the sense contemplated by the Code.

These, it seems to me, were the ordinary class of litigated cases. The counsel on both sides were doubtless faithful, diligent and persevering. This was their duty. This was their implied obligation to their clients. There were two cases tried, substantially together ; they occupied three days' time—not unusual in references ; the same testimony, as far as applicable, was used in both cases. There was no summing up on either side. The cases were submitted to the referee.

If these are " difficult and extraordinary cases," I do not see why all litigated cases are not so. The statute did not, I think, mean to make so general an allowance.

If I am wrong in my views as to my *power* under the statute, I should be constrained to deny the motions for extra allowance upon this construction of the statute. I know Judge Barculo, in one case, did go to the length now contended for. He has not, I believe, been followed.

The motions must therefore be denied.

From the last order this appeal is brought.

*Fourth District General Term, March,* 1860.

H. C. Adams, *for appellant, argued the following points:*

I. The first ground of denial stated in Mr. Justice Campbell's order, holding that the motions for extra allowance were " premature," &c., was erroneous.

1st. Prior to the adoption of section 317, Code, the statute required a special application for costs to defendant, in an action by an executor as plaintiff, and they were awarded or not upon the merits of the case, and the discretion of the court. (2 *R. S.*, 615, 1*st*, 2*d* and 3*d* eds., § 18, [§ 17 ;] 9 *Wend.*, 486 ; *Graham's Pr.*, 2*d* ed., 737.)

2d. That provision, (§ 17,) and the practice which prevailed under it, has been wholly abrogated by the Code, section 468, and section 317, Code, substituted, which gives to the defendant in such action, costs " as in an action by and against a person prosecuting or defending in his own right" &c. (*See Code*, § 317 ; *Curtis* agt. *Dutton*, 4 *Sand. S. C.*, 719 ; *Woodruff*, adm'r agt. *Cook*, 14 *How. Pr. R.*, 486 ; *Lemon* agt. *Wood*, 16 *How. Pr. R.*, 286.)

NOTE.—In the 4th and 5th editions of the Revised Statutes, (*see 5th ed., vol.* 3, *t. p.* 908, § 17,) together with all sections preceding it in that title, are wholly omitted, (see editor's note at the beginning of the title,) and there is no provision of law now in force exempting executors, &c. from costs, except the solitary section 41, (2 *R. S., p.* 90,) referred to in section 317, Code, which embraces only actions against executors, &c., not actions by them. (*See cases cited.*)

Now, if section 18, [§ 17,] which required a special application for costs, in actions by executors, &c., has been abrogated, then how shall we obtain those costs given to us by section 317, Code ?

We insist the object of section 317, Code, is to give defendants sued by executors costs as a legal right against the estate, unless on defendant's application the court shall, for certain causes, direct the same to be paid by the executor personally. (*See authorities cited.*)

II. The only cases in which executors, &c. are exempt from costs, are those mentioned in section 41, preserved solitary and alone by section 317, Code.

That section 41 refers exclusively to claims against the

estate upon which suits are brought against the executor, and the right of the plaintiff in such cases is dependent under section 41, 2 R. S., m. p. 90. (*See 5th ed., vol. 3. t. p.*, 176.)

1st. Upon the question whether the plaintiff has presented his claim against the estate within the time prescribed by section 44, [39,] and payment " unreasonably refused or neglected," or

2d. Whether the defendant (*i. e.* the executor) " refused to refer the same" pursuant to section 43, [§ 38,] and referred to in section 46 [§ 41.]

Those sections from 38 to 41 refer exclusively to claims against the estate ; the time and mode of presentation ; and the remedy of a claimant against the estate. Of course they do not reach these cases.

In the cases therein mentioned the estate has safeguards against unnecessary prosecutions of the estate, but it does not follow that because the estate is protected from unnecessary prosecutions, that its representatives are licensed to wage a litigious war against an individual and then plead section 41 as their license.

If they may with an individual they may with a whole community, and the whole scheme of our laws in relation to costs is upon the theory that if an unnecessary and unfounded prosecution be commenced and lost, the losing party shall pay costs, whether he be a representative or an individual.

3d. These actions are not embraced in section 41.

The executor (instigated by the sole beneficiary of the estate) prosecutes, and we from necessity defend in both successfully.

They are not actions " founded upon claims against the estate," but they are founded upon claims of the estate against the defendant.

The defendant had no control over these causes. He was compelled from necessity to interpose his counter-

claims in the one and the superior title in the other, of both
of which he fully apprised the executor (and also the sole
devisee and legatee) he had, and both of which he has
fully established, as he fully apprised them he would.

He is therefore entitled as a legal right to costs under
section 317. (*See* 4 *Sand.*, 719; 14 *How.*, 486; 16 *How.*,
286.)

III. The second ground stated in Mr. Justice CAMPBELL's
order, that " no certificate of the referee as to the nature
of the case, &c. has been presented," was erroneous.

There is no provision of law requiring a certificate except
the last paragraph of section 41, but that applies only to
such cases as are mentioned in that and the three preced-
ing sections. Of course it is inapplicable to these cases,
for the reasons already stated in Points I and II.

IV. The justice erred in deciding that he " had not the
power to grant these motions."

This decision is founded upon the erroneous idea that
defendant was not entitled to any costs under section 317.

He holds that section 41 applies to these cases, and that
under it we are not entitled to any costs. This was errone-
ous, as we think we have already shown in Points I and II.

We have shown that section 17, m. p. 615, (2 *R. S.*,
1*st*, 2*d* and 3*d editions*,) has been abrogated and wholly
omitted in the 4th and 5th editions, and that Code, section
317, down to the first period of that section, was a substi-
tute for section 17 ; and section 317, Code, gives costs as
a legal right in the class of cases mentioned in section 17,
where the executor was the plaintiff.

This proves that two distinct classes of cases were and
are provided for, viz : 1st. Where the executor was the
prosecutor, as in section 17, (2 *R. S.*, *m. p.*, 615 ;) and 2d.
Where the executor is the defendant, as in section 41, (2
*R. S.*, *m. p.*, 90.)

We deny that section 41 of the Revised Statutes goes to
the broad extent claimed by the justice in his opinion.

If it were so, representatives could by unnecessary prosecutions vex and harass a whole community with impunity, and thus compel individuals to buy their peace. Are estates or their representatives privileged to that extent?

The justice refers, in his opinion, to the case of *Belding* agt. *Knowlton*, (3 *Sand. S. C.*, 758;) *Benedict* agt. *Caffe*, (3 *Duer*, 672;) and *Fort* agt. *Gooding*, (9 *Barb.*, 388–394, *per* WILLARD, J.) But they do not support the views of his honor, for the reasons already stated.

V. His honor claims that " it does not change and ought not to change the liability of a representative to costs that the claim was interposed as a defence in the form of a counter-claim," &c.

With all possible respect for his honor, we think it wholly unnecessary to set out on a circumpolar exploration to get around the plain letter of the law. We have shown that the law provides for distinct classes of cases.

1st. Where the executor was plaintiff or prosecutor, as in section 17, (2 *R. S., m. p.* 615,) now incorporated in section 317, Code, which gives costs against executors as a legal right, &c., and dispensing with the necessity of a special application, &c.

2d. Where the action was founded upon a demand against the estate, section 41 (2 *R. S., m. p.* 90) must have been complied with, &c.

Were these actions founded upon defendant's counterclaims in the first and superior title in the second? They were founded upon a claim to recover the $500 note, and the claim of the property by the executor.

Actions are founded upon the subject matter stated in the complaint. But it would be comical to say that an action is founded *upon a defence;* that a suit is commenced, &c. upon what *may* appear in defendant's answer, &c.

The question of costs depends upon no qualification except as in section 41, which does not protect him from being sued, but from being unnecessarily sued, and this his

honor calls a remedial act, and so it is.   It remedies unnecessary prosecutions against estates.   So was section 17 a remedial act; it remedied unnecessary prosecutions by estates against individuals.   Section 17 is now abrogated and costs are provided for in section 317, Code; and that, too, is a remedial act.

There is no special privilege on either side.   The whole scheme of our laws is founded upon a remedial theory; they protect individuals as well as estates.

But even if the justice were right in his views as to the action founded on the note, he was clearly wrong as to the action in trover for the property, for there the defendant had no claim to present.   He had the possession of the property under a claim of title, and he needed nothing more.   How could the justice apply section 41 to that case ?

In short, the principles we contend for have been repeatedly pronounced at general term in like cases.   (*See* 4 *Sand. S. C.*, OAKLEY, J. ; 14 *How. Pr. R.*, 486, BALCOM, J. ; 16 *id.*, 286, WELLES, J.)

And where a decision of this court is pronounced at a general term thereof, &c., it is authoritative and binding as such upon the judges of this court, and all subordinate tribunals, and in all places, until overruled, &c., or reversed by the court of appeals.   (16 *How. Pr. R.*, 289 ; 9 *Barb. R.*, 489.)

His honor seems to suppose that " representatives might connive," &c.

This, we think, is borrowing trouble ; the law makes them liable, in various ways, for such conduct.

His honor also seems to suppose that " courts would lose all control over them."

But courts have entire control over them, and cannot very well lose it.   Courts have ample power by law to order, restrain, attach or remove them.

VI. The views of his honor as to whether these are " difficult and extraordinary" cases, &c., we think are erro-

neous. The justice says, " what would be difficult to one counsel might perhaps be quite a common affair to another, so that the skill or capacity of the counsel is not to control."

If this be a correct view, then the latter portion of section 309 must be, for all practical purposes, a dead letter to the profession ; for what would be " difficult" to the average and even to those who are regarded as superior in the profession, " might be quite a common affair" to those who are pre-eminent. And who shall judge what is " difficult" ?—where are the landmarks ?

It is easy to perceive that under that view, section 309 would be of no practical importance or benefit to the profession. The true inquiry is, was the labor, skill or professional requirement sufficiently provided for by the fee bill ? If not, then by section 309, the court should make a suitable indemnity. (9 *Barb.*, 395 ; 5 *How. Pr. R.*, 121, 152.)

It was conceded on the part of the plaintiff that these causes were " extraordinary," but it was denied that they were " difficult," and his honor the justice says, " the difficulty must be inherent."

We claim that they were both "difficult and extraordinary," because of the amount in question ; the extended range of inquiry into the large and varied business of the testator ; and the large number of necessary witnesses subpœnaed and sworn ; the unusual number of matters litigated, as shown by the report and otherwise ; the double claims against the defendant, *i. e.* the claim to recover the value of the property in one suit as a counter-claim to defendant's counter-claim, and the value of the same property in the other suit ; amendment of plaintiff's pleadings ; questions of law as to the competency of evidence ; the large amount of time, labor and expense incurred by defendant to vindicate his rights and to defend himself against these unreasonable and vexatious prosecutions instigated by the sole devisee and legatee of the estate, and doubly prose-

cuted against him by the plaintiff on his part, and the sole devisee, &c. on her part, by separate counsel.

In the language of Justice WILLARD, in *Fort* agt. *Gooding*, (9 *Barb.*, 395,) " the regular fee bill affords no adequate compensation for professional services in such cases."

And the effect of prosecuting by separate counsel was to increase the defendant's labor two-fold, without any increase of compensation (unless the court will allow it under section 309, Code.) The plaintiff on his part had his duty to employ counsel, and the sole devisee and legatee had perhaps a strict right to employ counsel on her part, (an unusual and extraordinary affair, to say the least of it;) but the defendant should not be prejudiced by the extra labor and difficulty thus cast upon him.

If the sole devisee and legatee of the whole estate insists on her extreme rights to multiply the " difficult and extraordinary" feature of these cases, the plaintiff should not and the sole devisee, &c. cannot complain if she is required thus, in part, to indemnify the defendant for extra labor, costs and difficulties thus cast upon the defendant. See the emphatic language of WILLARD, J., 9 *Barb.*, 395; and see BARCULO, J., in 5th *How. Pr. R.*, 121 *and* 153.

The order appealed from should be vacated, with costs.

P. GRIDLEY and A. H. AYRES, *for respondent.*

By the court, JAMES, Justice. A motion was made in each of the above entitled causes for the ordinary costs against the plaintiff, and for an extra allowance under section 309 of the Code. Both motions were denied at the special term, from which decision the defendant appeals.

The first action was brought upon a note for $500 found among the executor's papers, made by the defendant. The answer, among other defences, set up a counter-claim against the testator.

The second action was brought to recover property in

the defendant's possession, claimed to belong to the estate, worth $760. The answer set up title in the defendant.

Before action brought on the note, the plaintiff was informed that the defendant did not owe the estate any thing, but that the estate was indebted to him. After that this action, as well as the other, was commenced by express direction of the devisee and legatee of the will.

Both actions were referred, and occupied three days in their trial; ten witnesses were sworn on the part of plaintiff, and fourteen on behalf of defendant. The referee reported in favor of the defendant in both actions; and in the first action for the sum of $2,123.77.

The defendant in each of the above causes was entitled to the ordinary costs of the action, as of course without motion, or application to the court. (*Woodruff, &c.* agt. *Cook*, 14 *How. Pr. R.*, 481; *Curtis* agt. *Dutton*, 4 *Sand. R.*, 719.) Prior to the adoption of section 317 of the Code, the Revised Statutes read as follows: (2 *R. S.*, 615, §§ 16 *and* 17:) § 16. "In all actions and proceedings in which the plaintiff would be entitled to costs, upon a judgment rendered in his favor, if, after the appearance of the defendant, such plaintiff be non-suited," &c., " or judgment pass against him on verdict, demurrer, or otherwise," &c., " the defendant shall have judgment to recover against such plaintiff full costs," &c. § 17. "But the last section shall not extend to give a defendant costs against executors or administrators," &c., " unless upon special application, the court shall award costs against them," &c.

This statute required a special application to the court for costs, in all cases where a defendant succeeded in an action against an executor or administrator plaintiff.

These provisions of the Revised Statutes were abrogated by the Code, (*secs.* 304, 305, 317 *and* 468,) so far as costs against executors or administrators are concerned. Section 317 of the Code is substituted for all the provisions of the Revised Statutes, except section 41, (2 *R. S.*, 90,) which

is expressly retained, Section 317 of the Code declares that " in an action prosecuted or defended by an executor or administrator, costs shall be recovered as in an action by and against a person prosecuting in his own right," except when exempted therefrom by section 41, (2 *R. S.*, 90.) Now, section 41 does not exempt executors or administrators from costs in actions brought by themselves. That section relates only to actions *brought against* executors and administrators, not such as are brought by them. (*Woodruff* agt. *Cook, supra.*) The section says, " in such suits no costs shall be recovered against the defendants; nor shall any costs be recovered in any suit at law, against any executors or administrators, to be levied of their property or of the property of the deceased, unless it appear that the demand on which the action was founded was presented within the time aforesaid, and its payment was unreasonably resisted or neglected, or that the defendant refused to refer the same," &c. It is unmistakable that this section contemplated only actions brought against the executor or administrator ; not only are they there spoken of as defendants, but the exception is as to demands existing against the estate.

In neither of these cases was the demand on which the action was founded, a demand against the estate. Suppose a set-off was allowed in the first case, the action was not predicated upon that set-off ; and to the second action there was simply a defence. It is clear, therefore, that these were not actions where an executor or administrator is, by the Revised Statutes, exempted from costs, and hence, having been defeated, costs against them follow to the successful party as a matter of course.

Therefore, that part of Justice CAMPBELL's order, holding the application for an extra allowance premature, because no order had been obtained for the ordinary costs of the action, was erroneous ; and that part of the order of the

special term appealed from, which held that the defendants were not entitled to costs in the action, must be reversed.

Upon the question of an extra allowance, I fully concur with the special term, and adopt the opinion of the learned judge, written on that occasion.

The Code, in difficult *and* extraordinary cases where a trial has been had, permits the court in its discretion to make further allowance to any party, (§ 309.) A similar clause was formerly attached to section 308, but was repealed in 1857. In 1858 a similar clause was attached to section 309, with this difference, that now the case must be both difficult *and* extraordinary, while under the former, if it was either, it was sufficient. Under the former statute the rulings of the courts were in many instances extremely broad and liberal ; so much so as for a time to bring the provision into disgrace. One judge made an extra allowance when an injunction was taken for want of an affidavit of merits ; another, in all referred cases ; another, where a trial lasted four or five days; another, in all litigated cases ; and another, in all cases where there had been a trial. All these cases ever seemed to me to be a violation of the plain letter and spirit of the statute, calculated to produce injury to the profession and bring the whole question of costs into disrepute,

The legislature had provided a fee bill in ordinary actions, which they deemed just as between the parties. To prevent injustice, it provided in difficult or extraordinary cases for an additional compensation in the discretion of the court. An extra allowance, therefore, in any case whether difficult or extraordinary, or not, was a complete nullification of the legislative intent, and a violation of its plainly expressed will.

Since the adoption of the present statute, so far as my knowledge extends, courts have been more careful and strict in giving it construction.

Was either of these cases both difficult and extraordi-

nary ? If so, wherein ? It is not shown that either involved a difficult question of law, or that they were difficult of trial; or extraordinary in their nature, character, or mode of prosecution. On the contrary, the actions were ordinary actions, conducted in the ordinary way, having a large number of witnesses on each side, and took the necessary time for their examination. Such a case is not difficult and extraordinary, within the meaning of section 309 of the Code.

The order of the special term should be modified as above indicated, and nothing more. The ordinary costs are properly chargeable against the plaintiff, and therefore the first part of the motion was not necessary; the second part defendant was not entitled to. No costs on this appeal should be allowed to either party.